IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANGELA M. SUDHOLT, KYHL A. SUDHOLT, KARA JONES, and BENJAMIN JONES, Individually and on Behalf of Others Similarly Situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| COUNTRY MUTUAL INSURANCE COMPANY AND ITS OFFICERS AND DIRECTORS, JAMES MELVIN JACOBS, RICHARD LOUIS GUEBERT, JR., JENNIFER LYNN VANCE, MILES THORNE KILCOIN, ROBERT HAROLD BATEMAN, PHILIP TIM NELSON, BRIAN KEITH DUNCAN, RICHARD KENNETH CARROLL, LEONARD BRADLEY DAUGHERTY, ROBERT EDWIN KLEMM, JOHN LARRY MILLER, GARY ALLEN SPECKHART, MARK ROGER TUTTLE, KENNETH CHARLES CRIPE, TAMARA DEE HALTERMAN, STEVEN PATRICK KOELLER, KEITH RANDALL MUSSMAN, STEVEN RAY STALLMAN, EARL HARMON WILLIAMS, LARRY WILLIAM DALLAS, ROBERT JOHN FECHT, JEFFREY ROBERT KIRWAN, DON EUGENE MEYER, MARK FREDERICK REICHERT, KENTON LLOYD THOMAS, DENNIS WAYNE GREEN, STEVEN WILLIAM FOUREZ, DAVID LEE SERVEN, BRADLEY ALLEN TEMPLE, RANDY JOSEPH POSKIN, MICHELE RENEE AAVANG, DAVID LEE MEISS, CHAD KENNETH SCHUTZ, STEVEN GENE HOSSELTON, TROY ARNOLD | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:22-cv-3064-DWD |

**UPHOFF, CHRISTOPHER BRUCE )
HAUSMAN, DALE BRYAN HADDEN, )
WAYNE ROY ANDERSON, SCOTT )
FRANCIS HALPIN, DENNIS LEE )
HUGHES, ROBERT HENRY GEHRKE, )
JAMES ALFRED ANDERSON, )
CHARLES MICHAEL CAWLEY, )
DARRYL ROBERT BRINKMANN, J.C. )
POOL, and TERRY ALLEN POPE, )**
                                                  **)**
        **Defendants.**        **)**

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Plaintiffs' Motion to Remand or, in the Alternative, to Voluntarily Dismiss Without Prejudice ("Motion") (Docs. 34 & 35). Defendants, Country Mutual Insurance Company and its current and former officers and directors, filed Responses in Opposition to the Motion (Docs. 47 & 48). Plaintiffs then filed Replies (Docs. 51 & 52). The Court held a hearing on the Motion and is now prepared to rule. For the reasons explained below, the Motion is **DENIED**. By virtue of this ruling, the Joint Motion for Stay of Mailing of Any Certified Order of Remand (Doc. 71) is **DENIED as moot**.

## I. Background

On November 14, 2022, Plaintiffs filed a 4-Count Complaint (Doc. 1-1) in the Circuit Court of St. Clair County. Plaintiffs, who are allegedly citizens of the State of Illinois with their permanent residences in Clinton County and/or St. Clair County, are current and former policyholders of Defendant, Country Mutual Insurance Company ("Country Mutual"). (Doc. 1-1, pgs. 4-5). Country Mutual is an Illinois corporation with its principal place of business in McLean County. The other individual Defendants are

current and former officers and directors of Country Mutual. (Doc. 1-1, pgs. 5-10). Plaintiffs, on behalf of themselves and all other similarly situated Illinois citizens who paid premiums on an insurance policy underwritten by Country Mutual or its other entities, allege Defendants failed to meet their obligation of providing and operating in a manner reasonably calculated to provide insurance at its cost. (Doc. 1-1, pgs. 4, 34-37).

More specifically, in Count I, Plaintiffs allege breaches of contract and of the covenant of good faith and fair dealing against Country Mutual. (Doc. 1-1, pgs. 37-40). In Count II, Plaintiffs allege a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) against Country Mutual. (Doc. 1-1, pgs. 40-42). In Count III, Plaintiffs allege unjust enrichment by Country Mutual. (Doc. 1-1, pgs. 42-43). In Count IV, Plaintiffs allege a breach of fiduciary duty by each individual Defendant. (Doc. 1-1, pgs. 43-47). Plaintiffs seek broad relief for Defendants' alleged retention of excess premiums as surplus, allegedly in violation of their fundamental purpose and legal obligations as a mutual insurance company, including, *inter alia*: (1) a declaration that Country Mutual's policies and practices regarding premiums and distributions of corporate surplus are wrongful and unconscionable under its legal obligations to policyholders; (2) an order enjoining Country Mutual from operating in a manner that is not reasonably calculated to provide insurance at its cost; (3) an award of statutory, compensatory, and punitive damages; (4) an award of restitution; (5) an award of prejudgment and postjudgment interest; (6) findings that the individual Defendants breached their fiduciary duty to policyholders; (7) an order directing Country Mutual to

distribute compensation to policyholders for premiums paid in excess of the cost of insurance; and (8) an award of attorney fees and costs. (Doc. 1-1, pgs. 4, 47-48).

On December 22, 2022, Country Mutual filed a Notice of Removal (Doc. 1) under 28 U.S.C. §§ 1332, 1441, 1446, and 1453, wherein Country Mutual discussed the size of the putative class and the amount in controversy. *See* 28 U.S.C. § 1332(d)(2), (5)(B); (Doc. 1, pgs. 3-4, 7-10). With respect to minimal diversity, the Notice of Removal noted, *inter alia*, at least one of the individual Defendants is a citizen of a state different than that of any Plaintiff. *See* 28 U.S.C. § 1332(d)(2)(A); (Doc. 1, pgs. 4-5). That is, the named Plaintiffs and the proposed class members are all allegedly citizens of Illinois while Defendant Robert H. Bateman is a citizen of Massachusetts. (Doc. 1, pg. 5). An affidavit of Defendant Bateman, which was submitted as an exhibit to the Notice of Removal, indicates his domicile is in Massachusetts, where he intends to remain for the long term. (Doc. 1, pg. 6). Defendant Bateman owns real property, is registered to vote, and is licensed to drive in Massachusetts. (Doc. 1, pg. 6). Defendant Bateman owns three vehicles that are registered in Massachusetts, where he also maintains his bank account. (Doc. 1, pg. 6). Based on the size of the class, the amount in controversy, and Plaintiffs' minimal diversity with Defendant Bateman, Country Mutual removed the case from St. Clair County.

Thereafter, on January 23, 2023, Plaintiffs filed the instant Motion, which the parties have fully briefed with their Responses and Replies. The Court held a hearing on the Motion on May 25, 2023. (Doc. 72). The parties' filings are discussed in detail below.

## II. Analysis

Now, Plaintiffs concede the case satisfies the requirements for removal related to class size and the amount in controversy under § 1332(d)(2) and (5)(B). (Doc. 35, pg. 6). Plaintiffs also admit, if the Court accepts the assertion that Defendant Bateman is a citizen of Massachusetts, then minimal diversity exists under § 1332(d)(2)(A). (Doc. 35, pg. 6).

In light of the representations in the Notice of Removal, the Court finds for the purposes of the Motion that Defendant Bateman is a citizen of Massachusetts. (Doc. 1, pgs. 4-7). Therefore, a grant of the Motion is proper only if one of the exceptions stated in 28 U.S.C. § 1332(d)(4)(A), (d)(4)(B), or (d)(9)(B) applies to bar an exercise of jurisdiction or if the Court may grant the alternative relief sought by Plaintiffs under Federal Rule of Civil Procedure 41(a)(2).

### A. The Exceptions to Jurisdiction

The party opposing the removal and seeking a remand, *i.e.*, Plaintiffs in this case, have the burden of establishing the applicability of an exception to jurisdiction. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012) (citing *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006); *Evans v. Walter Indust., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006)); *accord Schartz v. Parish*, No. 16-cv-10736, 2016 WL 7231613, *2 (N.D. Ill. Dec. 14, 2016). The exceptions are read without a presumption for remanding or retaining jurisdiction. *See LaPlant v. Northwestern Mut. Life Ins. Co.*, 701 F.3d 1137, 1139 (7th Cir. 2012). The statutory language is given a natural meaning, in light of

its context, without the Court placing "a thumb on the scale." *See id.* (citing *Appert*, 673 F.3d at 609; *Katz v. Gerardi*, 552 F.3d 558 (7th Cir. 2009)).[1]

### 1. The "Local Controversy" Exception

Section 1332(d)(4)(A), known as the "local controversy" exception, in pertinent part, provides: "A district court shall decline to exercise jurisdiction…over a class action in which…principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A)(i)(III); *accord Hart*, 457 F.3d at 679.[2] This exception is narrow and involves a strong preference for interstate class actions being heard in federal court. *See Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 584 (7th Cir. 2017) (quoting *Hart*, 457 F.3d 681). The Court must bear in mind that the purpose of each criterion of the exception " 'is to identify a truly local controversy…uniquely affect[ing] a particular locality to the exclusion of all others.' [Citation]." *See Kurth v. Arcelormittal USA, Inc.*, No. 9-cv-108, 2009 WL 3346588, *7 (N.D. Ind. Oct. 14, 2009) (quoting *Evans*, 449 F.3d at 1163).

Plaintiffs argue the "principal injuries" requirement is satisfied since the proposed class is limited to Illinois citizens. Plaintiffs note their allegations center on Country Mutual's failure to provide Illinois citizens with insurance at its cost, meaning the

---

[1]Country Mutual largely incorporated and adopted, by reference, the individual Defendants' arguments as to the "home state" exception and the alternative relief requested under Rule 41(a)(2). (Doc. 47, pg. 20). Its Response is focused on the "local controversy" exception and the "internal affairs" exception. Likewise, the individual Defendants largely incorporated and adopted, by reference, Country Mutual's arguments as to the "local controversy" and "internal affairs" exceptions. (Doc. 48, pgs. 8-9). Their Response is focused on the "home state" exception and the alternative relief requested under Rule 41(a)(2).

[2]The other elements of this exception are not at issue.

principal injuries were felt in Illinois. (Doc. 35, pg. 9). Plaintiffs also note, over the past 10 years, 55% of premiums were paid by Illinois policyholders. (Docs. 1, pg. 9; 35, pg. 9).

In response, Country Mutual argues, despite Plaintiffs limitation of the proposed class to Illinois policyholders, the alleged injuries are "national in scope" because its policies are marketed by representatives in 19 core states. (Doc. 47, pgs. 2-4, 9). In other words, Country Mutual asserts Plaintiffs' "principal injuries" are not limited to Illinois. Country Mutual notes, consistent with Plaintiffs' assertion above and the Notice of Removal, "45% of [its] overall premium[s] [are] written outside of Illinois." (Docs. 1, pg. 9; 35, pg. 9; 47, pgs. 2, 4). Country Mutual further notes that its surplus is not allocated to any particular state. (Doc. 47, pg. 10). For these reasons, Country Mutual argues any injury resulting from its alleged failure to provide insurance at its cost would be felt by all Country Mutual policyholders throughout the country. (Doc. 47, pgs. 4-5, 9).

Here, Plaintiffs allege Country Mutual failed to provide, or operate in a manner reasonably calculated to provide, insurance at its cost, which is a "failure to satisfy [its] fundamental purpose and legal obligations" as a mutual insurance company. (Doc. 1-1, pgs. 4, 38-39, 41, 45). Further, Plaintiffs allege Defendants have a fiduciary obligation, "embedded in *every* contractual agreement between Country Mutual and its policyholders," to maintain and distribute any and all corporate profits exclusively for the benefit of the customer-owners of the company. (Doc. 1-1, pgs. 14, 38-39, 41, 45) (Emphasis added). As Plaintiffs note, "th[ose] profits belong to Country Mutual, and ultimately, its policyholders." (Doc. 1-1, pgs. 23-26, 34).

However, it does not appear that these baseline allegations are limited to policyholders in the State of Illinois, as Country Mutual provides coverage for more than 1.4 million vehicles and 700,000 homes across 19 states. (Docs. 1-1, pg. 13; 72, pgs. 41-42). Likewise, the parties appear to agree that 55% of premiums were paid by Illinois policyholders and 45% of premiums were paid by non-Illinois policyholders. (Docs. 1, pg. 9; 35, pg. 9; 47, pgs. 2, 4). Also, Plaintiffs' allegations target the operations of Country Mutual and its individual officers and directors, generally, without any indication that those operations do not similarly impact policyholders in Illinois and in the 18 other states where Country Mutual does business. In other words, it seems certain allegations, related to Country Mutual's "presentation of itself as a mutual insurance company," could be made with equal force in the 18 other states where it does business. (Doc. 1-1, pg. 42).

For these reasons, the Court cannot conclude that the "principal injuries," resulting from Defendants' alleged conduct, were incurred only in the State of Illinois, where this case was originally filed. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(III). And, while not determinative, Country Mutual points to the legislative history that addresses the notion of "principle injuries," as used in this exception, and it seems to lend support to the Court's conclusion here. *See* Sen. Rep. No. 109-14, 40, 2005 U.S.C.C.A.N. 3, 38 (2005) (noting "principle injuries" under § 1332(d)(4)(A)(i)(III), which has a purpose of "ensur[ing] that th[e] exception is used only where the impact of the misconduct alleged by the purported class is localized," means "all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought," such that conduct allegedly injuring consumers throughout the country or broadly throughout the

8

several states would not qualify under the exception even if raised in a single-state class action). As such, the case does not present " 'a truly local controversy…uniquely affect[ing] a particular locality to the exclusion of all others.' [Citation]." *See Kurth*, No. 9-cv-108, 2009 WL 3346588, *7 (quoting *Evans*, 449 F.3d at 1163). Based on Plaintiffs' own allegations, the injuries are not limited to Illinois but are instead "national in scope." (Doc. 47, pgs. 2-4, 9). For these reasons, the Court **FINDS** the "local controversy" exception does not apply in this case.

### 2. The "Home State" Exception

Section 1332(d)(4)(B) provides: "[a] district court shall decline to exercise jurisdiction…[over a class action in which] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). In this case, it is undisputed that "the members of all proposed plaintiff classes" are citizens of Illinois, where the case was originally filed. *See id*. The same is true with respect to Country Mutual, who is undoubtedly a "primary defendant[]." *See id*. As a matter of fact, Defendant Bateman is the only one of the 47 total Defendants who is identified as a non-citizen of Illinois.[3] Therefore, if Defendant Bateman is not a "primary defendant[]" under § 1332(d)(4)(B), then the Court must decline to exercise jurisdiction.

"Primary defendants" is not defined by the statute. *See Singh v. American Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019). However, courts have defined "primary to

---

[3]However, Defendants have noted that not every named individual Defendant has been served.

mean direct and construed the words 'primary defendants' to capture those defendants who are directly liable to the proposed class, as opposed to…vicariously liable or secondarily liable based upon theories of contribution or indemnification." *See Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 504 (3d Cir. 2013) (citing *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 10-cv-510, 2011 WL 941079, *6 (D. Nev. Mar. 16, 2011); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 517 (E.D. Pa. 2007); *Kitson v. Bank of Edwardsville*, No. 6-cv-528, 2006 WL 3392752, *13-17 (S.D. Ill. Nov. 22, 2006)); *accord Kurth*, No. 9-cv-108, 2009 WL 3346588, *6; *but see Madison v. ADT, L.L.C.*, 11 F.4th 325, 328 (5th Cir. 2021) ("Whether…vicariously or secondarily liable is a relevant factor, certainly, but it does not necessarily control a court's determination, or the analysis would often be at odds with the Supreme Court's admonition 'against adopting rules in the [class action] context that would "exalt form over substance." ' "). Put another way, "[t]he phrase 'primary defendants' indicates a chief defendant or chief class of defendants." *See Watson v. City of Allen, Texas*, 821 F.3d 634, 641 (5th Cir. 2016).

Courts also look to the allegations in the complaint to identify who is expected to sustain the greatest loss from liability and whether those defendants, when compared to the other defendants, "have 'substantial exposure to significant portions of the proposed class.' " *See Vodenichar*, 733 F.3d at 505 (citing *Bennett v. Bd. of Comm'rs for East Jefferson Levee Dist.*, Nos. 7-cv-3130, 7-cv-3131, 2007 WL 2571942, *6 (E.D. La. Aug. 31, 2007); quoting *Robinson v. Cheetah Transp.*, No. 6-cv-0005, 2006 WL 468820, *2, n. 7 (W.D. La. Nov. 14, 2006)); *Smith v. Marcus & Millichap, Incorp.*, 991 F.3d 1145, 1162 (11th Cir. 2021). These considerations focus on the number of proposed class members impacted by the

defendant's actions and the amount the defendant may lose if liable. *See Vodenichar*, 733 F.3d at 505. The Court assumes liability, then determines the number of proposed class members to whom a defendant may be liable and the identity of the defendants who will sustain the greatest loss if liable, *i.e.*, the "real targets" of the allegations. *See id*. at 505-06; *see also Watson*, 821 F.3d at 641 (discussing the Fifth Circuit's prior application of the "primary defendants" requirement as well as the putative plaintiffs' claims against the various defendants, the defendants with the " 'primary role in the alleged' violations," and the lawsuit's "primary thrust"); *Madison*, 11 F.4th at 328 ("[T]here is much to commend the *Vodenichar* emphasis on the 'real target' of the litigation and *Watson's* description of the controversy's 'primary thrust.' "); *Singh*, 925 F.3d at 1067 (Ninth Circuit discussing, *inter alia*, *Vodenichar* and *Watson* before outlining a test that "align[ed]" itself with its "sister circuits," *i.e.*, the Third and the Fifth Circuits"); *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1336 (11th Cir. 2017) (agreeing with the reasoning and rule articulated in *Vodenichar*, at least where monetary relief is sought). The Court emphasizes that these considerations are not exhaustive and should not be applied mechanically, as "[t]he inquiry is whether a defendant is a ' "principal," "fundamental," or "direct" ' defendant." *See Singh*, 925 F.3d at 1068 (quoting *Vodenichar*, 733 F.3d at 504).[4]

---

[4]As noted by the Third Circuit in *Vodenichar*, the above-described approach to the meaning of "primary defendants" is supported by the statute's legislative history and the statements of the statute's sponsors. *See Vodenichar*, 733 F.3d at 504-05, n. 5 ("[T]he Sponsors intended the identity of the 'primary defendants' to be determined based upon the allegations concerning the defendants expected to be liable to the greatest number of class members and to suffer the greatest loss if liability is found."); 151 Cong. Rec. H723-01, 2005 WL 387992 (daily ed. Feb. 17, 2005) (statement of Representative Bob Goodlatte).

Plaintiffs argue Defendant Bateman, the only identified out-of-state Defendant, is not a "primary defendant." (Doc. 35, pg. 10). Plaintiffs note that Defendant Bateman is 1 of 46 individual Defendants named in 1 of 4 Counts. (Doc. 35, pg. 10). Plaintiffs also suggest, without the alleged improper accumulation of excess premium surpluses by Country Mutual, they would not have a basis for breach of fiduciary duty claims against any individual Defendants in Count IV. (Doc. 35, pg. 8, n. 3). Further, Plaintiffs argue Defendant Bateman, whose tenure with Country Mutual lasted approximately 2 years and 3 months, cannot be liable to any Plaintiffs for breaches of fiduciary duty that occurred before or after that short tenure. (Doc. 35, pg. 12). Country Mutual, by comparison, is the only Defendant named in 3 of the 4 Counts alleged in the Complaint. (Doc. 35, pg. 11). Country Mutual is also the only Defendant named in more than one Count. (Doc. 35, pg. 11). For these reasons, Plaintiffs argue Country Mutual faces the greatest exposure to liability. (Doc. 35, pg. 11). Plaintiffs emphasize, due to the varying tenures of the individual Defendants and the potential absence of overlap between those tenures and the time any Plaintiff was paying a premium, Country Mutual is the only Defendant against whom every Plaintiff has a legal claim. (Doc. 35, pgs. 11-12).

In response, the individual Defendants argue 46 of the 47 total Defendants are individual Defendants. (Doc. 48, pg. 6). The individual Defendants also argue they are not joined in this case for purposes of indemnification or contribution and Plaintiffs' breach of fiduciary duty claim is not premised on vicarious liability. (Doc. 48, pg. 6). To the contrary, the individual Defendants maintain that they are sued based on duties

allegedly owed to each proposed class member, directly, and the alleged breach of those duties as a result of each individual Defendant's personal acts. (Doc. 48, pg. 6).

Here, the Court initially recognizes the rather awkward nature of the test for identifying primary defendants and the fact that it requires a fair bit of guesswork. This is especially so for that part of the test requiring a court, without meaningful acuity or resolution, to forecast the proper apportionment of damages among the various defendants. On the other hand, giving focus to the actions or conduct of a given defendant seems to be a more workable process, particularly because the plaintiff is the master of the complaint and is free to describe the specific actions that bring a defendant into the lawsuit. Here, Plaintiffs describes in some detail the actions of Defendant Bateman that give rise to his being named as a defendant.[5]

Based on Plaintiffs' own "direct" claim, each individual Defendant, including Defendant Bateman, had the "ability to control the business and affairs of Country Mutual" due to his or her position as an officer and/or director of Country Mutual. (Docs. 1-1, pgs. 22-23, 43-45; 35, pg. 3). Indeed, Plaintiffs allege the individual Defendants, including Defendant Bateman, "did not merely acquiesce in decisions taken by others but consciously made the decision to breach their fiduciary duty as part of a concerted policy and practice of the Board of Directors." (Doc. 1-1, pg. 47). It was the individual Defendants who were required to supervise the "management, policies, practices, and controls of the financial affairs of the mutual insurance company" by, *inter alia*, doing the

---

[5]The Court is mindful that the case was initially filed in Illinois state court where "fact pleading" is required.

following: managing, directing, conducting, and supervising the business affairs of Country Mutual under all applicable laws; ensuring Country Mutual complied with its legal obligations; avoiding the wasting of assets; and maximizing the value to policyholders by providing insurance at its cost. (Doc. 1-1, pgs. 23-24). In short, due to "their positions of authority and control as directors and/or officers of Country Mutual, [the] Individual Defendants were able to, and did, exercise control over the acts complained of" in this case. (Doc. 1-1, pg. 23). Further, the individual Defendants and their decision-making was clearly integral to "fulfill[ing] Country Mutual's fundamental purpose of providing insurance at cost," even if they allegedly usurped profits in order to enrich themselves to the detriment of policyholders. *See Vodenichar*, 733 F.3d at 505 (stating, when determining whether a defendant is a "primary defendant," courts should decide whether the plaintiff seeks to hold the defendant responsible for its own actions or to have the defendant pay for others' actions); (Doc. 1-1, pgs. 22-26, 24, 34, 45-46). It is difficult for Plaintiffs to parbuckle their arguments for the "home state" exception against the winds of their own Complaint. Thus, the Court concludes that Defendant Bateman's alleged actions and involvement in the events giving rise to liability are significant. As such, the Court cannot single-out Defendant Bateman as a non-primary defendant.

Further, Plaintiffs are correct that Country Mutual is the only Defendant named in 3 of the 4 Counts alleged in the Complaint. However, the Court can just as easily note that Country Mutual is only 1 of 47 total Defendants in this case. Therefore, the case demonstrates that merely comparing the number of counts alleged against a particular defendant or the number of defendants named in a particular count does not necessarily

14

illustrate who is a primary defendant. *See Singh*, 925 F.3d at 1069 (finding it was not enough for the district court to look only at what claims were asserted against which defendants, even though doing so can help to determine direct versus secondary liability and the exposure to liability, because "a mechanical review of how many claims are asserted against a defendant is inappropriate"); *Vodenichar*, 733 F.3d at 506 (finding a corporation was a "primary defendant[]," where, although more claims were asserted against other defendants, the claims against the corporation were as or more significant, the plaintiffs alleged each defendant was directly liable, the plaintiffs appeared to apportion liability equally, and the plaintiffs sought similar relief from the defendants).

It is clear, however, that the alleged conduct of both Country Mutual and the individual Defendants, including Defendant Bateman, impacted significant portions of the proposed class. Plaintiffs allege Country Mutual may be liable to every proposed class member, and that may well be true. But the Court does not believe that fact alone renders Defendant Bateman or the other individual Defendants non-primary under § 1332(d)(4)(B). In other words, while an individual Defendant's liability to the proposed class members may hinge on the timing of the individual Defendant's tenure at Country Mutual, that is not to say those individual Defendants are not exposed to substantial liability to significant portions of the proposed class. Indeed, Plaintiffs identify two individuals, Defendants James M. Jacobs and Richard L. Guebert, Jr., who have been employed by Country Mutual since 2012 and 2013, respectively. (Docs. 1-1, pgs. 5-6; 35, pg. 12). Since Defendants Jacobs and Guebert's tenure with Country Mutual spanned a significant portion of the time relevant to this lawsuit, they are exposed to substantial

liability to significant portions of the proposed class. The same is true for Defendant Bateman even though he was employed by Country Mutual for only about 2 years and 3 months. (Docs. 1-2, pg. 3; 35, pg. 12). Due to the nature of the allegations, which relate to the individual Defendants' control, authority, supervision, and decision-making, Defendant Bateman's alleged conduct conceivably impacted a significant portion of the proposed class during and in the years after his tenure. (Doc. 1-1, pgs. 22-24, 44-45, 47).

Moreover, Plaintiffs include a single Prayer for Relief in their Complaint, which requests varying forms of relief from both Country Mutual and the individual Defendants. (Doc. 1-1, pgs. 47-48). In other words, Plaintiffs do not include a prayer for relief in each Count of the Complaint, which, as has been discussed, do not always pertain to the same Defendants. Notably, in terms of statutory, compensatory, and punitive damages, Plaintiffs do not specify whether the request is directed at Country Mutual, the individual Defendants, or both. (Doc. 1-1, pgs. 47-48). This manner of pleading tends to exacerbate the "awkward nature" of the test for identifying primary defendants and its associated "guesswork." *See supra*, pg. 14. Even assuming each Defendant is liable, though, the Court cannot estimate the amount any single defendant or class of defendants may lose if liable, and Plaintiffs do not even attempt to do so or to meaningfully distinguish between the Defendants on this basis. *See Vodenichar*, 733 F.3d at 505; *Kurth*, No. 9-cv-108, 2009 WL 3346588, *7 (holding the "home state" exception did not apply, where, *inter alia*, a direct recovery was sought from all defendants, to the same extent, and there was no suggestion certain defendants were more culpable or liable than others).

For these reasons, the Court **FINDS** both Country Mutual and the individual Defendants, including Defendant Bateman, are the "real targets" of the allegations made by Plaintiffs and are inseparably the subjects of the lawsuit's "primary thrust." *See Vodenichar*, 733 F.3d at 505-06; *Watson*, 821 F.3d at 641; *Madison*, 11 F.4th at 328; *Singh*, 925 F.3d at 1067. Accordingly, the Court **FINDS** Country Mutual and the individual Defendants, including Defendant Bateman, are primary defendants under § 1332(d)(4)(B), such that the "home state" exception does not apply in this case.

### 3. The "Internal Affairs" Exception

Section 1332(d)(9)(B), known as the "internal affairs" exception, states: "Paragraph (2) shall not apply to any class action that solely involves a claim…that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized." 28 U.S.C. § 1332(d)(9)(B). The Seventh Circuit, in the context of 28 U.S.C. § 1453(d)(2), which includes identical language to that in § 1332(d)(9)(B), has noted the following with respect to the internal affairs doctrine:

> [It] is 'a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationship among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.'

*LaPlant*, 701 F.3d at 1139 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); citing *Atherton v. FDIC*, 519 U.S. 213, 223 (1997)); *accord CDX Liquidating Trust v. Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011); *see also Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996) ("A single rule for each corporation's internal affairs reduces uncertainty and

the prospect of inconsistent obligations; it also enables the corporate venturers to adjust the many variables of corporate life (including contractual promises made to CEOs), confident that they can predict the legal effect of these choices.").

Sections 1332(d)(9)(B) and 1453(d)(2) "reflect[] the view that, when just one state's law applies to a nationwide class, a state court can provide a satisfactory resolution." *See LaPlant*, 701 F.3d at 1139. Further, different conflicts of law principles apply where the rights of third parties, who are external to the corporation, are at issue. *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 552, 581 (S.D. N.Y. 2018) (quoting *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 225 (S.D. N.Y. 2004)); *accord First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). The execution of a contract or the commission of a tort, for example, do not implicate the internal affairs doctrine because such "issues 'can practicably be decided differently in different states.' [Citation]." *See Mindspirit*, 346 F. Supp. at 581 (quoting *Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 560 (S.D. N.Y. 2010); citing *Roselink Investors*, 386 F. Supp. 2d at 225).

Under these authorities, Plaintiffs argue their claims relate to Country Mutual's internal governance because those claims are centered around one core allegation, namely, that Country Mutual has been governed in a manner that deprives policyholders of insurance at its cost. (Doc. 35, pg. 13). This core allegation, in Plaintiffs' view, raises a fundamental question about whether Country Mutual is acting in accordance with its legal purpose as a mutual insurance company. (Doc. 35, pg. 14). In this way, the case does not merely involve claims grounded in contract or tort but claims in corporate law. (Doc. 35, pg. 14). Plaintiffs emphasize, under the established meaning of "internal affairs," the

case "is not concerned with a run-of-the-mill dispute about an insurer's obligation to pay on a policy, but rather [with] whether County [*sic*] Mutual's strategy of accumulating surplus is so divorced from industry and regulatory standards that it cannot be reconciled with a basic obligation to provide insurance 'at cost.' " (Doc. 35, pg. 15).

In response, Country Mutual argues Plaintiffs cannot satisfy this exception because, contrary to the explicit statutory language, the claims alleged in the Complaint extend beyond Country Mutual's "current" officers and directors and do not "solely involve[] a claim...that relates to" Country Mutual's internal affairs or corporate governance. *See* 28 U.S.C. § 1332(d)(9)(B); (Doc. 47, pgs. 12-13). Country Mutual argues Plaintiffs' claims instead involve current, as well as former, officers and directors. (Doc. 47, pgs. 12-13). Further, Defendants argue Plaintiffs' claims involve tort, insurance, and contract law rather than "solely" corporate law. (Doc. 47, pgs. 15-19).

Here, Plaintiffs allege breaches of contract and of the covenant of good faith and fair dealing, a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, unjust enrichment, and breaches of fiduciary duties. In doing so, Plaintiffs reference the obligations and duties contained in its contractual agreements with its policyholders, as well as Defendants' duties under tort principles. (Doc. 1-1, pgs. 14-16, 19, 22-27, 31-34, 36, 38-47). Plaintiffs also cite the Illinois Insurance Code and the Illinois Consumer Fraud and Deceptive Business Practices Act, the latter of which, generally, involves Defendants' alleged deception of Plaintiffs and the general public. (Doc. 1-1, pgs. 17, 19, 25).

Even if these claims involve a common thread related to Country Mutual's alleged obligation to provide insurance to its policyholders at its cost, the proposed class action

clearly does not "solely" involve claims relating to the internal affairs or governance of Country Mutual and arising under or by virtue of the laws of Illinois. *See* 28 U.S.C. § 1332(d)(9)(B). Put differently, the alleged conduct is not peculiar to corporate relationships. *See LaPlant*, 701 F.3d at 1139; *CDX Liquidating Trust*, 640 F.3d at 212. Plaintiffs' claims, which are grounded in contract and tort principles, may be decided differently from state to state, depending upon their respective bodies of contract and tort law. *See Mindspirit*, 346 F. Supp. at 581; *see also LaPlant*, 701 F.3d at 1140 (stating lawsuits related to the meaning of insurance policy provisions "are decided every day without either judge or litigants dreaming that they need to understand or address corporate law. These are disputes about the policies, resolved under insurance law rather than…the internal-affairs doctrine. Just so with disputes about the meaning of annuity contracts."); *Mashallah, Inc. v. West Bend Mutual Ins. Co.*, 20 F.4th 311, 326 (7th Cir. 2021) ("But '[w]hatever rights a member of a mutual company has are delineated by the terms of the contract, and come from it alone.' [Citation].").

Further, Plaintiffs' claims are not peculiar to the relationship between Country Mutual and its *current* officers, directors, and shareholders. *See LaPlant*, 701 F.3d at 1139; *CDX Liquidating Trust*, 640 F.3d at 212. Rather, the individual Defendants are both current *and* former officers and directors of Country Mutual. *See LaPlant*, 701 F.3d at 1139; *CDX Liquidating Trust*, 640 F.3d at 212. Likewise, Plaintiffs are current *and* former policyholders of Country Mutual. (Doc. 1-1, pgs. 4-5). Therefore, even though mutual insurance companies are owned by their policyholders, *i.e.*, their members, the present case does not involve matters peculiar to Country Mutual and its *current* officers, directors, and

shareholders. *See LaPlant*, 701 F.3d at 1139; *CDX Liquidating Trust*, 640 F.3d at 212; *see also Mindspirit, LLC*, 346 F. Supp. at 581 (holding the internal affairs doctrine was inapplicable, where the plaintiff's breach of contract claim did not implicate the relationships of the corporation, its directors, officers, or shareholders, was not brought by those corporate individuals or on behalf of the corporation, and the breach of contract claim concerned the rights of a third party who was a corporate outsider); *Dominion Energy, Inc. v. City of Warren Police and Fire Ret. Sys.*, 928 F.3d 325, 337 (4th Cir. 2019) (finding aiding and abetting claims failed to satisfy the internal affairs exception, where they were entirely predicated on relationships other than those among or between a corporation, its directors, and its stockholders, namely, on the relationships of the corporation's CEO and board members with individuals outside the corporation). It is notable, too, that the Seventh Circuit has commented on the relationship presented by the parties under the internal affairs exception. *See LaPlant*, 701 F.3d at 1140 (stating, in the context of the "internal affairs" doctrine, "policyholders in a mutual have 'ownership' interests, but that is not enough," as other disputes involving ownership interests and money due to a creditor are "regularly resolved under the law of contract…[and] are not thought of as disputes about internal corporate affairs); *see also Lubin v. Equitable Life Assur. Soc. of U.S.*, 326 Ill. App. 358, 368 (1945) ("[A] mutual life insurance company['s]…policy contracts create the relationship solely of debtor and creditor between it and its policyholders.").

For these reasons, the conflicts of law principles, underlying the "internal affairs" doctrine, do not apply in this case. *See LaPlant*, 701 F.3d at 1139; *CDX Liquidating Trust*, 640 F.3d at 212; *Nagy*, 79 F.3d at 576. In other words, it does not appear the State of Illinois,

and only the State of Illinois, should have the authority to regulate the conduct alleged in order to avoid conflicting demands or obligations, reduce uncertainty, and predict the legal effect of corporate choices. *See LaPlant*, 701 F.3d at 1139; *CDX Liquidating Trust*, 640 F.3d at 212; *Nagy*, 79 F.3d at 576. Accordingly, the Court **FINDS** the "internal affairs" exception is inapplicable in this case.

## B. Voluntary Dismissal Under Rule 41(a)(2)

As alternative relief, Plaintiffs request a dismissal under Rule 41(a)(2). Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). It is an abuse of discretion to grant a motion under Rule 41(a)(2) if the defendant will suffer "plain legal prejudice" as a result of the dismissal. *See Kovalic v. DEC Intern., Inc.*, 855 F.2d 471, 473 (7th Cir. 1988) (quoting *U.S. v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir. 1986)); *accord Gillaspy v. Club Newtone, Inc.*, No. 20-cv-13, 2022 WL 17414984, *1 (N.D. Ind. Dec. 5, 2022). Generally, several factors guide the court's consideration of whether the defendant has suffered "plain legal prejudice," including the defendant's effort and expense in preparing for trial, the plaintiff's excessive delay and lack of diligence in prosecuting the case, whether the explanation for the need to dismiss is sufficient, and whether a motion for summary judgment is pending. *See Kovalic*, 855 F.2d at 473-74 (quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)); *accord Gillaspy*, No. 20-cv-13, 2022 WL 17414984, *1.

While it is sometimes possible to amend away jurisdiction, "removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction." *See In re Burlington Northern Santa Fe Ry. Co.*,

606 F.3d 379, 381 (7th Cir. 2010) (citing *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 473-74, n. 6 (2007)). As such, the "well established rule," including in the context of the Class Action Fairness Act ("CAFA"), is that jurisdiction is determined at the time of removal and nothing filed thereafter may affect jurisdiction. *See id.* at 380-81 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); *In re Shell Oil*, 970 F.2d 355, 356 (7th Cir. 1992); *Bullard v. Burlington Northern Santa Fe. Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008)); *Altoum v. Airbus S.A.S.*, No. 10-cv-467, 2010 WL 3700819, *2 (N.D. Ill. Sept. 19, 2010).

Plaintiffs admit that they seek "the option of refiling their Complaint[,] without naming Robert H. Bateman as a defendant," in state court. (Doc. 35, pg. 15). In doing so, Plaintiffs argue their claims are not dependent upon Defendant Bateman and, in fact, that "many members of the proposed class do not possess individual claims…against Bateman[] because his time with Country Mutual was relatively short." (Doc. 35, pg. 15). According to Plaintiffs, the relevant questions of law in this case "should be decided by a state court." (Doc. 35, pg. 15). Further, Plaintiffs argue Defendants will not be prejudiced by a grant of this requested relief, as the case was initiated in November 2022, only an Answer to the Complaint and Notice of Removal has been filed, no discovery has been exchanged, and Plaintiffs have diligently prosecuted their claims. (Doc. 35, pgs. 16-17).

In response, Defendants take issue with Plaintiffs' reasons for seeking relief under Rule 41(a)(2). Country Mutual argues Plaintiffs' alternative request for relief is "procedural gamesmanship" that seeks to deprive it of access to a federal forum. (Doc. 47, pg. 2). Likewise, the individual Defendants argue Plaintiffs should not be allowed to forum shop by dismissing Defendant Bateman, thereby prejudicing Plaintiffs by

destroying minimal diversity jurisdiction and depriving them of a statutory right to access the federal courts following a proper removal. (Doc. 48, pgs. 1-2, 9-13, 18).

Here, Plaintiffs are correct that the case is still in its early stages, such that neither Defendants' effort and expense in trial preparation nor Plaintiffs' speed in prosecuting the case weigh in favor of denying the alternative relief sought under Rule 41(a)(2). *See Kovalic*, 855 F.2d at 473-74; *accord Gillaspy*, No. 20-cv-13, 2022 WL 17414984, *1. Also, there is no motion for summary judgment pending. *See Kovalic*, 855 F.2d at 473; *accord Gillaspy*, No. 20-cv-13, 2022 WL 17414984, *1. However, the Court finds this issue must be decided based on the remaining consideration, namely, whether Plaintiffs' explanation for the need to dismiss this action is sufficient. *See Kovalic*, 855 F.2d at 474 (" '[T]he enumeration of the factors to be considered…is not equivalent to a mandate that each and every factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom the discretion ultimately rests.' [Citation].").

By their own admission, Plaintiffs seek the alternative relief under Rule 41(a)(2) to strike Defendant Bateman from the Complaint and refile this case in the Circuit Court of St. Clair County. (Doc. 35, pg. 15). In doing so, Plaintiffs merely indicate that the relevant questions of law in this case "should be decided by a state court." (Doc. 35, pg. 15). However, the Court has now found that the case was properly removed from the Circuit Court of St. Clair County and that no exception to the Court's jurisdiction supports a remand. Therefore, it is undeniable that a grant of the alternative relief under Rule 41(a)(2), based on the explanation provided by Plaintiffs, would operate to deprive Defendants of their statutory right to proceed in federal court after a proper removal. In

24

finding that this would constitute "plain legal prejudice," the Court notes it is acting consistent with the Seventh Circuit's "well established rule" that jurisdiction, even in the context of CAFA, is determined at the time of removal and cannot be affected by subsequent filings. *See Burlington*, 606 F.3d at 380-81; *Altoum*, No. 10-cv-467, 2010 WL 3700819, *2; *see also Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 427 (5th Cir. 2014) ("[W]hat matters for the purpose of determining CAFA jurisdiction is 'the status of an action when filed—not how it subsequently evolves."); *Bullard v. Burlington Northern Santa Fe Ry. Co.*, No. 7-cv-6883, 2008 WL 4104355, *8 (N.D. Ill. Aug. 29, 2008) (stating, in the context of the defendants' concern that the dismissal of fifty-three plaintiffs would allow the remaining plaintiffs to defeat federal jurisdiction under CAFA, the subsequent voluntary dismissal of certain plaintiffs would have no effect on the court's subject matter jurisdiction because the question of whether the defendants satisfied the requirements of CAFA is determined at the time of removal).

Indeed, the Court is acting consistent with the decisions of other courts that have similarly considered this issue. *See Bullard*, No. 7-cv-6883, 2008 WL 4104355, *10 (concluding a grant of the plaintiffs' motion to dismiss the claims of fifty-three plaintiffs under Rule 41(a)(2) would constitute "plain legal prejudice" to the defendants, where, *inter alia*, "Plaintiffs had to have understood, when filing a single mass action complaint in state court on behalf of 144 individuals, that they would be subject to federal jurisdiction under CAFA if the defendants chose to remove it…[and] [h]aving lost that gamble, [Plaintiffs] should not now be permitted to file a new, CAFA-proof action in a state court venue they believe would be more favorable to them, forcing defendants to

litigate duplicative actions"); *Tillman v. BNSF Ry. Co.*, 33 F.4th 1021, 1029 (8th Cir. 2022) ("Our settled rule is that a plaintiff seeking voluntary dismissal without prejudice must give a reason other than 'merely to seek a more favorable forum.' [Citations]."); *Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 1214-15 (8th Cir. 2011) (stating the rule against seeking a more favorable forum through voluntary dismissals and finding, in the context of a removal under CAFA, the district court erred by failing to address the plaintiff's purpose in seeking a voluntary dismissal, where the plaintiff's "expressed intent" was to amend the complaint in order to avoid federal jurisdiction); *Blaes v. Johnson & Johnson*, 858 F.3d 508, 512, 515 (8th Cir. 2017) (stating "[a] plaintiff cannot use a motion to voluntarily dismiss to seek a more favorable forum"); *Cedar Lodge Plantation, L.L.C.*, 768 F.3d at 429 ("Allowing Cedar Lodge to avoid federal jurisdiction through a post-removal amendment would turn the policy underlying CAFA on its head."); *McEachern v. Whirlpool Corp.*, No. 19-cv-13084, 2020 WL 13499903, *1 (E.D. Mich. Jan. 15, 2020) (denying the plaintiff's motion to voluntarily dismiss the case under Rule 41(a)(2), where the plaintiff "expressly state[d]" a dismissal was sought to circumvent CAFA jurisdiction and to have the case heard in state court); *Loper v. Lifeguard Ambulance Serv., LLC*, No. 19-cv-583, 2020 WL 8617215, *10 (N.D. Al. Jan. 10, 2020) (finding it would constitute "clear legal prejudice" to allow the plaintiff to dismiss her complaint in order to file a new class action, admittedly limited to Alabama citizens for purposes of the "home-state" exception to federal jurisdiction, in Alabama state court).

For these reasons, the Court **DENIES** the alternative relief under Rule 41(a)(2).

### III. Conclusion

For the reasons explained above, the Motion to Remand or, in the Alternative, to Voluntarily Dismiss Without Prejudice is **DENIED**. In light of this ruling, the Joint Motion for Stay of Mailing of Any Certified Order of Remand is **DENIED as moot**.

**SO ORDERED.**

Dated: June 26, 2023

_____
DAVID W. DUGAN
United States District Judge